## MONTGOMERY v. McDERMOTT et al.

(Circuit Court, S. D. New York. February 7, 1900.)

1. PLEADING—ISSUES—EFFECT OF SUSTAINING PLEA OF RES JUDICATA.

   A decision sustaining a plea, which set up a judgment in a former suit as an adjudication binding upon the parties, becomes the law of the case, and precludes the relitigation therein of any question adjudicated in the former suit.

2. EQUITY—JURISDICTION—ANCILLARY SUIT.

   A suit in equity cannot be maintained in aid of an attachment at law, where it has been adjudged in a prior suit, to which the complainant was a party, and by the judgment in which he is bound, that his attachment was ineffectual to give him any lien.

3. FEDERAL COURTS—JURISDICTION—ANCILLARY SUIT.

   Complainant filed a bill in equity in a federal court, alleging that through an attachment in an action at law in said court against an alien the court had acquired jurisdiction of a fund in the hands of trustees, but that, by reason of the death of the defendant leaving no representatives in this country, it had become impossible to proceed further in such action, and praying the aid of the court in the enforcement of his lien as against the trustees, who were made defendants. No federal question was involved, and the parties were all citizens of the same state. *Held*, that the only ground of federal jurisdiction was the ancillary nature of the suit, and that, on its being determined therein that a judgment of a state court adjudging that the attachment was ineffectual to give a lien upon the fund was binding upon the complainant, the court was without jurisdiction further to entertain the suit.[1]

This was a suit in equity. On final hearing.

William W. MacFarland and Stephen H. Olin, for complainant.

Charles C. Beaman and Gherardi Davis, for defendants McDermott, Boyd, Woodman, Bischoffsheim, and Dunning.

Edward Clifford Perkins, for defendants Perkins and Fowler.

---

[1] As to supplementary and ancillary jurisdiction of federal courts, see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195.

COXE, District Judge. This controversy has been before the court on two prior occasions. First on demurrer (83 Fed. 576), and second, on plea. 87 Fed. 372. In the first instance the bill was sustained as being in aid of a suit at law in which an attachment had issued, but in which no relief was possible because of the death of the defendant and the failure of his foreign executors to revive. In the second instance a plea of res judicata was allowed. A motion for a reargument was made and denied. That the decision sustaining the plea is controlling upon this court until reversed is axiomatic. There is no exception to the rule; it lies at the threshold of an orderly and consistent administration of justice. This court having decided that the questions determined by the state court in Perkins et al. v. Montgomery et al. cannot again be litigated, it becomes important to ascertain what those questions were. The action was brought by Perkins and Fowler, as trustees, against Montgomery, Dunning, the sheriff of New York and the United States marshal. The defendants Montgomery and Dunning, who are parties to this action, demurred and the demurrers were sustained, the court holding that the suit could not be maintained for the reason that the complaint failed to show a valid lien upon the property alleged to be covered by the attachment. The court decided the following propositions: First. An action of interpleader can only be sustained where a reasonable doubt exists as to which of the claimants is entitled to the fund. Second. The suggestion that the deed of trust is invalid is without color of support. Third. The principal contention of Montgomery namely, that the transfers made by McHenry and his grantee were colorable and voidable as against creditors and that Woodman, the last transferee, held the certificates in reality for the benefit of McHenry who had an interest therein which was subject to the lien of the attachments, is without reasonable foundation. Fourth. The attachments were not levied until 12 years after the legal title to the certificates had passed from McHenry to others. McHenry had no title and there was nothing on which the attachment could operate. Fifth. Conceding that the transfer was made for the purpose of defrauding creditors this would afford a good ground for a judgment creditor's action but not for an attachment. Sixth. Neither the sheriff, the marshal nor the attaching creditors could bring any suit in aid of the attachment challenging the validity of these transfers, and an action of interpleader, which involves the trial of such an issue between the defendants, cannot be sustained. Seventh. Montgomery acquired no lien upon the interest sought to be attached and, therefore, none upon the fund in question. His contention is without reasonable foundation; he has no claim upon the trustees. Upon this decision judgment was entered, the court finding the following conclusions of law:

"(1) That the amended complaint does not state facts sufficient to constitute a cause of action, inasmuch as it does not show that the defendant Montgomery acquired any lien upon the fund in controversy in this action under the attachments referred to in said amended complaint therein, or either of them. (2) That the defendants Montgomery and William F. Dunning are entitled to an interlocutory judgment which shall adjudge that their respective demurrers are sustained with costs."

The defendant Dunning, who, as before stated, was a party to the interpleader suit, joins with his answer a plea of res judicata based upon the decision in that suit as follows:

"And this defendant avers that by reason of the proceedings and judgment aforesaid the complainant herein is barred and estopped from bringing and maintaining any suit or action whatever upon the grounds set forth in his bill of complaint herein, and that as to the matters and things therein alleged and the relief therein demanded the said complainant is concluded by the said judgment."

Of course, this plea must be sustained upon the authority of the former decision of this court. It is of no moment that Montgomery and Dunning were both defendants in the interpleader suit; their interests were conflicting and the judgment is as conclusive as if rendered in a suit in which they held the relation of plaintiff and defendant. Corcoran v. Canal Co., 94 U. S. 741, 24 L. Ed. 190; Leavitt v. Wolcott, 95 N. Y. 212, 222. The theory of the bill is that it can be maintained as ancillary to the action at law to enable the complainant to preserve and enforce the lien of the attachment which otherwise would be lost. The bill avers:

"Your orator is advised that he requires the aid of this court as a court of equity in order to enable him to avail himself of the benefit of the said attachment to enforce the lien thereof, and appropriate the property attached to the payment of the said debts when the amount thereof shall be ascertained."

If no attachment had been issued in the action at law it is manifest that there would be nothing on which to base the action in equity. It is only because of the lien alleged to have been acquired that the aid of equity is invoked. If the complainant had no lien there is nothing for equity to aid. The mere fact that an attachment issued is of no consequence unless it fastened itself upon some property of the defendant and impounded it so that the plaintiff could reach it if he obtained a judgment. The state court has decided that the attachment was inoperative in that it gave the complainant no lien, and this court has decided that none of the parties to the action in the state court can relitigate that question. As to them it is a closed book, the estoppel is complete.

It is urged that the interpleader suit was collusive and fraudulent. It is unnecessary to decide whether this question can be litigated in the present action and, if so, to what extent, for the reason that the court is of the opinion that the charge is without foundation in fact. The suggestion of an interpleader seems to have come in the first instance from the attorneys for the complainant. In a letter, dated December 8, 1894, they write to the trustees:

"It seemed obvious to us that you, as trustees, would not be willing to pay the money to any one until you were protected by the order of some court of competent jurisdiction. Such an order, it seemed to us, might be obtained in various modes of proceeding. Thus you might begin an action of interpleader and pay the money into court."

There is no pretense that any fact bearing upon the issue was withheld from the state court or misrepresented in the pleadings. The claim of the complainant was fairly stated and was, indeed, the identical claim alleged in the present bill. A proposition to pay money into court in New York can hardly be regarded as proof of

a plot to smuggle the money into the hands of a favored creditor in London. How, in these circumstances, it is possible to disregard the judgment of the state court on the theory that it was obtained by fraud is beyond the power of this court to comprehend. It follows, therefore, that by virtue of the judgment in the interpleader suit and the decision of the court holding that judgment to be res judicata, the complainant is estopped from asserting, as against the defendants Perkins, Fowler and Dunning, that he obtained a lien by virtue of his attachment. As to them there was no lien and, therefore, no basis for an ancillary suit.

The theory of the bill, as before stated, is that the complainant needs the assistance of a court of equity to enforce his lien; there being no lien, there is nothing which a court of equity can aid, it is without jurisdiction. What, then, is there left for decision? It is true that the defendants McDermott, Boyd, Woodman and Bischoffsheim are not affected by the estoppel, but no decree can be rendered against them which will avail the complainant. In other words, should the court determine each of the many issues presented by the briefs in favor of the complainant the result would be a mere brutum fulmen. With the defendants last named alone on the record the complainant can obtain no relief. They are treated in the complainant's brief as nominal defendants only. The logic of the former decisions is that the complainant has had his day in court with the real defendants—the custodians of the fund and the holder of the legal title of the 100 shares standing in the name of Woodman. The interpleader suit in effect decided that the trustees could not pay the fund to Montgomery for he had no interest therein and that they were safe in paying to Dunning, at least so far as Montgomery's claim was concerned. The court has never been able to perceive how the complainant can obtain the relief sought for in the present action while the decision upon the plea remains the law of the case. It is an insurmountable barrier in the path of the complainant and until it is removed he cannot reach the desired goal. But it is argued that, irrespective of the lien, the fund in the hands of the trustees may be regarded as the property of a dead man who left no legal representatives here and that the court will retain jurisdiction in order to prevent the fund from being carried beyond the reach of creditors. The difficulties here are many. Imprimis, this is not such a suit. It rests upon the foundation that, irrespective of the citizenship of the parties, the court has obtained jurisdiction of the subject of the litigation, having acquired control of the fund in controversy in an action at law in which further proceedings are impossible. This is the cause of action presented by the bill and on this theory the demurrer was overruled. Remove the foundation on which it rests and the action must fall. The lien is gone, or, at least, the complainant cannot assert its existence, and it is not easy to see how the bill can be retained or transformed so as to afford any relief to the complainant. It will hardly be maintained that this court could have obtained jurisdiction for any purpose if the suit at law had not been begun against McHenry, for the reason, among others, that no federal question is involved in the controversy between the complainant Dun-

ning and the trustees and they are all citizens of the same state. The pendency in this court of a naked action of assumpsit, which has become inoperative, does not confer jurisdiction over a subsequent action in equity relating to the same subject-matter. In brief, the court is constrained to hold that this is not an ancillary action and that no other ground of federal cognizance is stated. The bill must be dismissed.