# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2466

_____

| | | |
|---|---|---|
| Marty A. Hupp, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | | * District Court for the |
| United States Department of the | * | |
| | | Southern District of Iowa |
| Army; agent Togo D. West, Jr., Secretary, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:   December 11, 1997

Filed:   May 21, 1998

_____

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Plaintiff, Marty A. Hupp, appeals from a final judgment entered in the United States District Court[1] for the Southern District of Iowa upon a grant of summary

---

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

judgment in favor of defendant, Togo D. West, Jr., Secretary of the Army, on plaintiff's claim of gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq. For reversal, plaintiff argues that the district court erred in holding that her claim is non-justiciable under the Feres[2] doctrine. For the reasons discussed below, we affirm the district court's holding, modify the judgment, and affirm the judgment as modified.

## Jurisdiction

Jurisdiction was proper in the district court based upon 28 U.S.C. §§ 1331, 1343(a)(4). Jurisdiction is proper in this court based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure.

## Background

Plaintiff is a female Master Sergeant in the Iowa National Guard. In April 1995, plaintiff applied for the posted position of Support Services Supervisor at the State Area Command Armory at Camp Dodge in Johnston, Iowa. At the time, plaintiff was serving as the Detachment Sergeant for the 1088th Personnel Services Company which is also located at Camp Dodge. The Detachment Sergeant position is a National Guard position which requires the traditional reserve service commitment

---

[2]Feres v. United States, 340 U.S. 135 (1950) (holding that "the Government is not liable under the Federal Tort Claims Act for injuries to service [members] where the injuries arise out of or are in the course of activity incident to military service").

of one weekend of training per month plus two consecutive weeks of training per year. In addition to her National Guard position, plaintiff maintained full-time civilian employment with the University of Iowa. The Support Services Supervisor position, however, is a full-time National Guard civilian technician billet. Under the National Guard Technicians Act

of 1968 (NGTA), 32 U.S.C. § 709, an individual cannot hold employment as a National Guard civilian technician unless that individual is a member of the National Guard and holds the military grade which the Secretary has specified for the position.

During the first phase of the selection process, Sergeant Major Gary M. Heuertz reviewed the military records of every applicant and certified plaintiff as well as two male soldiers as militarily qualified to hold the technician position. In the second phase of the selection process, all three militarily qualified candidates appeared before a panel of three male military personnel for an interview. The panel's prepared questions were intended to focus on the candidates' fitness for the civilian technician position. During the interview process, however, the panel also made an inquiry, which was not part of the prepared questions, regarding plaintiff's family situation and child care arrangements.[3]

The panel selected one of the male applicants for the position. Although it is undisputed that plaintiff's military qualifications exceeded those of the male soldier selected for the position, the senior panel

---

[3]The evidence indicates that the same inquiry was made to the candidate who was eventually hired, Jeffrey L. Craven. Joint Appendix at 85-86 (sworn statement of Sergeant Major Edward D. Gabbard). Defendant contends that questions regarding family status and child care arrangements are appropriate because Army Regulation 600-20 requires soldiers to make plans "to ensure dependent family members are properly and adequately cared for when the soldier is deployed, on [temporary duty], or otherwise not available due to military requirements."

member, Lieutenant Colonel Robert C. King, asserted that he made the ultimate hiring decision and that he chose the male candidate based on his familiarity with the male candidate's abilities and a "gut feeling . . . that [the male candidate] was the best suited to conduct the business in the unit." Joint Appendix at 69 (sworn statement of Lieutenant Colonel Robert C. King). On May 23, 1995, plaintiff was informed that she was not selected for the position.

Plaintiff filed a formal complaint with the Iowa National Guard asserting that she was denied the position because of her gender. Following a review of her complaint by both the Iowa National Guard and the National Guard Bureau in Washington, D.C., plaintiff received a letter advising her that the panel's hiring decision was final and that she could file a civil action under Title VII in federal district court.

On September 16, 1997, plaintiff filed the present action, alleging that the Iowa Army National Guard discriminated against her with respect to employment because of her sex, in violation of Title VII. Joint Appendix at 7 (amended complaint and jury demand). She seeks compensatory and punitive damages, attorneys fees, and costs. Id. at 7-8. Defendant moved for summary judgment and the district court granted the motion upon holding that plaintiff's claim is non-justiciable. The district court noted that the Eighth Circuit has not specifically addressed the application of Title VII to National Guard civilian technicians. The district court assumed without deciding that plaintiff's claim could be raised under Title VII. However, the district court held that plaintiff's claim was non-justiciable, even assuming Title VII is applicable, because the hiring decision necessarily involved an assessment of the candidates' military qualifications. Hupp v. West, No. 4-96-70698, slip op. at 4-5 (N.D. Iowa Mar. 12, 1997) (memorandum opinion and order) (citing cases). This appeal followed.

## Discussion

We review a grant of summary judgment de novo. The question before the district court, and this court on

appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992); St. Paul Fire & Marine Ins. Co. v. FDIC, 968 F.2d 695, 699 (8th Cir. 1992). Where the unresolved issues are primarily

legal rather than factual, summary judgment is particularly appropriate. Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

The issue before us is whether the district court, viewing the facts in a light most favorable to plaintiff as the non-moving party, correctly held that plaintiff's claim is non-justiciable under Feres and its progeny. See, e.g., Uhl v. Swanstrom, 79 F.3d 751 (8th Cir. 1996) (Uhl); Wood v. United States, 968 F.2d 738 (8th Cir. 1992) (Wood); Watson v. Arkansas Nat'l Guard, 886 F.2d 1004 (8th Cir. 1989) (Watson). In Wood, 968 F.2d at 739-40, for example, a National Guard technician brought an action for compensatory and punitive damages, and other forms of relief, upon the allegation that the state adjutant general violated the plaintiff's due process rights by denying him the opportunity to serve as a military commander. The plaintiff argued that "the military justiciability doctrine, as summarized by this court in Watson, [did] not apply to his case because he was a civilian technician for the National Guard and . . . the position for which he sought appointment [was] a civilian technician position." Id. at 739. The district court held that the plaintiff's claim was non-justiciable and dismissed it with prejudice. Upon review, we observed that "[t]he hybrid nature of the [civilian technician] position renders it susceptible to the doctrine restricting review of military decision-making." Id. (citing cases). It was undisputed in Wood that "a determination of [the plaintiff's] military qualifications [was] a necessary step in determining whether he should have been assigned as alleged." Id. Therefore, upon construing the plaintiff's claim as a challenge on the merits to the constitutionality and

fairness of a personnel decision, which necessarily involved an assessment of the plaintiff's military qualifications, we agreed with the district court that his claim was non-justiciable under our prior opinion in <u>Watson</u>.[4]   <u>Id.</u> at 40.   Accordingly, we affirmed the district court's

---

[4]In <u>Watson v. Arkansas Nat'l Guard</u>, 886 F.2d 1004, 1008-11 (8th Cir. 1989), the Eighth Circuit ordered the dismissal with prejudice, on non-justiciability grounds, of a discharged former National Guard member's § 1983 claim seeking injunctive relief in the form of reinstatement.

holding, but vacated the judgment and remanded the case to the district court with instructions to dismiss without prejudice.  Id.

In the present case, plaintiff acknowledges that Title VII generally does not apply to uniformed members of the armed services.  Taylor v. Jones, 653 F.2d 1193, 1200 (8th Cir. 1981); Johnson v. Alexander, 572 F.2d 1219, 1224 (8th Cir.), cert. denied, 439 U.S. 986 (1978). Plaintiff also acknowledges that employment decisions concerning a National Guard civilian technician's military qualifications are non-justiciable under the Feres doctrine.  See, e.g., Uhl, 79 F.3d at 755; Wood, 968 F.2d at 739-40; Watson, 886 F.2d at 1005-08. Plaintiff argues, however, that Title VII may – in some circumstances – be the basis for a justiciable claim brought by a civilian who is employed by, or seeking employment with, the National Guard.  For example, in Mier v. Owens, 57 F.3d 747, 750 (9th Cir. 1995), cert. denied, 517 U.S. 1103 (1996), the Ninth Circuit held that, because National Guard civilian technicians are in a billet requiring both civilian and military responsibilities, Title VII covers "actions brought by Guard technicians except when the challenged conduct is integrally related to the military's unique structure." In the present case, plaintiff contends, defendant employed a two-stage hiring process which separated consideration of her military qualifications and her civilian qualifications.  Plaintiff asserts that her military qualifications, and thus any implication of the military's unique structure, ceased to be a factor once she and the two male candidates were pre-certified as militarily qualified.  For this reason, she argues, not only can she bring a claim under Title VII alleging

-11-

discrimination in the "civilian" phase of the hiring process, but also her Title VII claim is distinguishable from the claims in <u>Uhl</u>, <u>Wood</u>, and <u>Watson</u> and is not subject to the <u>Feres</u> doctrine.

In response, defendant argues that the dual civilian and military aspects of a National Guard technician's position are inseparable. Brief for Appellee at 6 (citing <u>Wright v. Park</u>, 5 F.3d 586, 589 (1st Cir. 1993) (<u>Wright</u>) ("while a technician's job is a composite, containing both civilian and military pieces, the job's dual aspects are

inseparable")).  Moreover, defendant argues, this court cannot separate the hiring process into various stages for review, as plaintiff suggests.  Id. (citing Wood, 968 F.2d at 739).  Defendant also notes that, under the NGTA, National Guard civilian technicians are subject to the state adjutant general's administration and must maintain membership in the National Guard, hold the military grade specified by the Secretary, and meet the security standards established by the Secretary.  32 U.S.C. § 709(b), (c), (e)(2).  Because the military and civilian aspects are intertwined, defendant concludes, a hiring decision involving a National Guard technician billet necessarily implicates the candidates' civilian and military qualifications.  See, e.g., Wright, 5 F.3d at 589.

For purpose of our analysis, we assume that Title VII applies to National Guard civilian technicians.  Although neither Uhl, Wood, nor Watson involved a claim pursuant to Title VII, we held in each case that a claim challenging the merits of an internal National Guard personnel decision, where that decision involved an assessment of a technician's military qualifications, is non-justiciable.  Uhl, 79 F.3d at 755; Wood, 968 F.2d at 739-40; Watson, 886 F.2d at 1008-11.  In the present case, we hold that it is beyond genuine dispute that the hiring process for the Support Services Supervisor position included consideration of both military and civilian qualifications.  Although the initial phase of the process reviewed only the applicants' military qualifications, consideration of  military qualifications did not end once the three candidates passed this initial phase.  Lieutenant Colonel King stated that, although military qualifications were already pre-certified, he

-13-

himself "weighed those back and forth."  Joint Appendix at 70 (sworn statement of Lieutenant Colonel Robert C. King).  He considered the facts that

> [t]here was a rank inversion, there was an MOS[5] inversion or difference. . . . [Y]ou've got a staff sergeant versus a master sergeant . . . one that's qualified MOS-wise, school trained and certified, but yet at the same

---

[5]"MOS" refers to "military occupational specialty."

time, I've got the other one who I have observed during the first [] months of my command, from the time I took commander until the time we conducted the interviews, that I had watched during every single weekend drill.

Id. at 70-71.  Similarly, another member of the panel, Major John Grote, indicated that, although he was more focused on the candidates' personal attributes as revealed in the interviews, the candidates' military qualifications were nevertheless "tied in" with the interview process.  Id. at 79 (sworn statement of Major John Grote).  Because these statements, and the record taken as a whole, demonstrate beyond genuine controversy that the hiring decision at issue in the present case did involve an assessment  of military qualifications, we affirm the district court's holding that plaintiff's claim is non-justiciable under the Feres doctrine.

We note that the district court did not indicate in its final order or judgment whether the dismissal in the present case is with or without prejudice.  Consistent with our disposition in Wood, 968 F.2d at 740, we  modify the judgment of the district court to specify that the dismissal of plaintiff's complaint is without prejudice.

## Conclusion

For the reasons stated, the judgment of the district court is modified, and the judgment of the district court, as modified, is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.