**Lillie M. MIDDLEBROOKS Plaintiff**

v.

**Tommy G. THOMPSON, Secretary United States Department of Health and Human Services** [1] **Defendant**

**No. CIV PJM 04–2792.**

United States District Court,
D. Maryland.

June 13, 2005.

---

1. Thompson is no longer Secretary of HHS, having been replaced by Michael O. Leavitt.

Pro Se, for Plaintiffs.

Neil R. White, Baltimore, MD, for Defendants.

## OPINION

MESSITTE, District Judge.

Lillie M. Middlebrooks has filed a *pro se* Complaint against the Secretary of the United States Department of Health and Human Services ("HHS"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3, *et seq.*[2] Middlebrooks claims she was discriminated against owing to her race when seeking employment as a Commissioned Officer in the United States Public Health Service's Commissioned Corps (CCPHS). Defendant has filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1).

The critical issue for decision is whether the protections of Title VII are available to civilian applicants seeking to become Commissioned Officers of CCPHS or whether the so-called "military exception" to Title VII, codified in 42 U.S.C. § 213(f), excepts civilian applicants.

No hearing is necessary to dispose of this matter. Local R. 105.6 (D.Md.1999). Having considered the pleadings, the Court GRANTS the Motion to Dismiss.

## I.

The CCPHS is one of the Uniformed Services of the United States (which also include the Army, Navy, and Air Force, among others) and is responsible for providing certain health care services on behalf of the Federal Government. Commissioned Officers of the Corps include health care professionals such as doctors and nurses.

The CCPHS does not commission applicants into the inactive reserve and call them to duty at a later date as the military does. Accordingly an applicant must be selected for a job in order to be commissioned. This means that the applicant must apply both to the Commissioned Corps and to the agency where she wishes to work. The Corps processes the application for admission to its membership, while the hiring agency reviews the actual application for the job being advertised. In a word, the application process is a dual one.

Both the hiring agency and the Commissioned Corps must approve the application, after which the applicant receives an offer from the Corps and is called to active duty as a Commissioned Officer.

Lillie M. Middlebrooks, an African American female, applied for three nursing vacancies to be a Commissioned Officer at the National Institutes of Health Warren Grant Magnuson Clinical Center, within the U.S. Department of Health and Human Services. Middlebrooks was chosen for none of the positions, which she says was on account of her race or in retaliation for engaging in protected activities under the law. As a result, she filed a complaint with HHS alleging illegal discrimination in employment.

In its Final Agency Decision, HHS found no evidence to support the race discrimination and retaliation claims. This lawsuit followed.

---

**2.** The Complaint proceeds in three Counts: (1) disparate treatment in violation of Title VII, (2) intentional discrimination in violation of 42 U.S.C. § 1981, and (3) retaliation in violation of Title VII.

## II.

█ A motion filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the federal court's subject-matter jurisdiction to adjudicate a case. Fed. R.Civ.P. 12(b)(1). Subject-matter jurisdiction pertains to the court's authority over the category of the claim in suit. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). The Fourth Circuit has held that a 12(b)(1) motion properly lies to determine the scope of the military exception as it applies to Title VII and the CCPHS. *Hedin v. Thompson*, 355 F.3d 746 (4th Cir. 2004).

## III.

█ Title VII, which otherwise outlaws discrimination in employment based on race and other factors, provides no remedy for uniformed service members. *Id.; Roper v. Department of the Army*, 832 F.2d 247–48 (2nd Cir.1987); *Taylor v. Jones*, 653 F.2d 1193, 1200 (8th Cir.1981). As the Supreme Court noted in *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983):

> The special status of the military has required, the Constitution has contemplated, Congress has created, and this Court has long recognized two systems of justice, to some extent parallel: one for civilians and one for military personnel ... The special nature of military life—the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel—would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command.

462 U.S. at 303–04, 103 S.Ct. 2362.

This principle applies even where allegations of racial discrimination are involved. *Id.*

It is indisputable that CCPHS Officers, even if not engaged in military service, are treated as military officers for purposes of the military exception. *Hedin,* 355 F.3d at 750–51.

The question in the present case is whether an *applicant* for a Commissioned Officer position in the CCPHS is covered by the exception, especially where she is obliged to make a parallel civilian-type application in conjunction with the application for admission to the Corps.

## IV.

Because recent legislation, *i.e.* 42 U.S.C. § 213(f), refers to "Active Service Commissioned Officers" as being barred from asserting employment discrimination claims,[3] Middlebrooks suggests that applicants who are not already serving as active service commissioned officers are not barred.

On the other hand, Defendant cites to *Spain v. Ball,* 928 F.2d 61 (2nd Cir.1991), an opinion authored by Judge Leval, in which the Second Circuit held that an applicant for an officer position with the Navy, a uniformed position, was not entitled to assert a Title VII against the Medical Service Corps. Although the Second Circuit in *Spain* simply declares without discussion that one applying for an officer position with the Navy is subject to the military exception, *Hupp v. United States*

---

3. The statute provides:
   (f) Active service deemed active military service with respect to anti-discrimination laws
   Active service of commissioned officers of the [Public Health] Service shall be deemed to be active military service in the Armed Forces of the United States for purposes of all laws related to discrimination on the basis of race, color, sex, ethnicity, age, religion, and disability.
   42  U.S.C. § 213(f).

*Department of the Army,* 144 F.3d 1144 (8th Cir.1998) provides a more explicit rationale. There a female applied for a technician position in the National Guard in what was a two-stage hiring process, one which primarily considered her military qualifications and the other her civilian qualifications. When she was not hired, she asserted a claim based on gender discrimination, contending in effect that the civilian and military aspects of the technician position were separable. The court, however, found that the hiring process could not be separated into various stages for purposes of review and that the hiring for a National Guard technician position necessarily implicated both the candidate's civilian and military qualifications. In consequence, the military exception was held to apply and the claim was held non-justiciable.

■ This Court finds the logic of *Hupp* applicable in the present case. Here it is clear that simultaneously with the agency's evaluation of the application, the CCPHS makes parallel determinations as to whether the applicant is qualified to be an officer and at what rank and pay. In short, while there may be civilian aspects to the dual application procedure in CCPHS hirings, this is an example of a personnel action that is "integrally related to the military's unique structure." *See Mier v. Owens,* 57 F.3d 747, 750 (9th Cir.1995) *cert. denied* 517 U.S. 1103, 116 S.Ct. 1317, 134 L.Ed.2d 470 (1996) (holding plaintiff's claim non-justiciable because it related to military promotion).

Accordingly, the Court holds that Middlebrooks is barred by the military exception to Title VII from proceeding with her Title VII claim in this case.

## V.

■ Middlebrooks' remaining arguments avail her little. The fact that, as part of its Final Agency Decision, HHS indicated that she had a right to file a civil action in an appropriate U.S. District Court is of no legal effect. Subject-matter jurisdiction of a federal court cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived by the parties. *See United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). Subject matter jurisdiction, moreover, cannot be conferred by waiver or estoppel. *Wisconsin Department of Corrections v. Schacht,* 524 U.S. 381, 389, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998). Federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). Accordingly, whatever HHS may have stated in its Final Agency Decision, this Court is not authorized to exercise jurisdiction in this case.

■ Finally, it is clear that Title VII represents the exclusive remedy for federal sector employees who wish to pursue claims of intentional discrimination in employment. A party may not maintain as an alternative a suit pursuant to 42 U.S.C. § 1981. *Brown v. General Services Admin.,* 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

For this reasons, Count II of the Complaint also fails.

## VI.

The Court **GRANTS** Defendant's Motion to Dismiss with prejudice.

A separate Order will be **ENTERED**.

### *FINAL ORDER OF JUDGMENT*

Upon consideration of Defendant's Motion to Dismiss [Paper No. 10] and Plaintiff's Opposition to same [Paper No. 12], it

is for the reasons set forth in the accompanying Opinion, this 10th day of June, 2005

**ORDERED:**

1) Defendant's Motion to Dismiss [Paper No. 10] is **GRANTED** and the Complaint is **DISMISSED**; and

2) The Clerk is directed to CLOSE this case.